IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| David Micheal Dietrich, ) | |
| ) | Civil Action No.2:12-cv-03501-RMG-BHH |
| Plaintiff, ) | |
| ) | |
| v.   ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Sheriff Bruce Bryant; Richard L. Martin; ) | |
| Chief Arwood; Lt. Guidry; Tammy ) | |
| Dover, *RN*; and James Jewell, *MD*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, a pretrial detainee proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Jewell (Dkt. No. 45), a Motion for Summary Judgment filed by the Plaintiff (Dkt. No. 86), and a Motion "for Default Order" filed by Plaintiff (Dkt. No. 87).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about December 4, 2012. (Dkt. No. 1.) On June 21, 2013, Dr. Jewell filed a Motion for Summary Judgment. (Dkt. No. 27.)[1] By order filed June 24, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 46.) Plaintiff filed his Response in Opposition to Dr. Jewell's motion on or about July 1, 2013. (Dkt. No. 48.) Several other

---

[1]The remaining Defendants filed a Motion for Summary Judgment on September 23, 2013 (Dkt. No. 62). In addition, Plaintiff filed his own Motion for Summary Judgment (Dkt. No. 84) and Motion "for Default Order" (Dkt. No. 85) pertaining to these Defendants. These motions are not addressed herein.

documents related to Dr. Jewell's motion have since been filed. (See Dkt. No. 49; Dkt. No. 53; Dkt. No. 92; Dkt. No. 105.)

On or about November 21, 2013, Plaintiff filed two motions: a Motion for Summary Judgment (Dkt. No. 86) and a Motion "for Default Order" (Dkt. No. 87). Responses to both of these motions have been filed. (See Dkt. No. 96; Dkt. No. 93; see also Dkt. No. 103; Dkt. No. 104.)

## **PROCEDURAL FACTS**

Plaintiff, a pretrial detainee at York County Detention Facility ("Detention Facility"), filed the instant action pursuant to 42 U.S.C. § 1983 on or about December 5, 2012. (See Dkt. No. 1.) Plaintiff alleges that on March 17, 2011, he was "violently and severely assaulted" at the Detention Facility. (Dkt. No. 1 at 5 of 11.) He contends that officers at the Detention Facility "acted with 'reckless disregard'" for his safety; he alleges that facility officials "knew that there was a substantial risk to [Plaintiff] of serious harm, but ignored that risk and failed to protect [Plaintiff] while [he] was in protective custody" within the Detention Facility. (Id.) Plaintiff states,

> [I]n booking William Huggins officers blatantly disregarded his violent history as well as his back-ground in screening him, and placed a violent offender within (I block) along with Dietrich, when in fact Huggins should and was supposed to have been placed in (I max unit).

(Dkt. No. 1 at 6 of 11.) Plaintiff alleges that "officials" knew of Huggins' "violent history and . . . failed to monitor Huggins closely d[ue] to his violent acts." (Id.)

Specifically, Plaintiff alleges that on March 17, 2011, Sergeant Hope was doing his rounds in the segregation unit when Hope saw food in one of the inmate's cells, and told that inmate that food was not allowed in the cells. (Dkt. No. 1 at 9 of 11.) Plaintiff states that because this inmate could not read or write, Plaintiff "was explaining to him from [the] 'York County Inmate Handbook'" that food was not allowed in cells. (Id.) Plaintiff states,

2

> At this point, another inmate known as William Huggins screamed out of [his] cell that the person telling you about the food is the one who snitched on you. I said I did no such thing.

(Id.) Plaintiff alleges that the lock on Huggins' cell door was not locked, which allowed Huggins to move about within the segregation unit at the Detention Facility. (Dkt. No. 1 at 10 of 11.) Plaintiff further alleges that "all [of] a sudden Huggins came out of his cell" and "sucker punched" Plaintiff, who "never saw it coming." (Id.) According to Plaintiff, he suffered six fractures to the left side of his face and a broken nose as a result of Huggins' assault. (Id.)

Plaintiff also complains about the medical care he has received at the Detention Facility and that he has been "denied adequate access to the courts." (See generally Dkt. No. 1.) Plaintiff alleges that has been "and is still currently suffering from [the] diagnosed medical ailment of 'hernia.'" (Id.) Plaintiff alleges that Defendant James Jewell, a physician, "stated to [Plaintiff] that they (YCDC) were not go[ing] to take [Plaintiff] to [an] outside physician for medial treatment for [his] hernia, although medical knows [Plaintiff] hurts [and is] in pain constantly." (Id.) According to Plaintiff, although he is indigent and has been at the Detention Facility for thirty months, Defendant Tammy Dover, RN, advised Plaintiff that Plaintiff "must pay for transportation of ($90.00) dollars and the cost of surgery up-front according to (YCDC) policy." (Dkt. No. 1 at 8 of 11.) Plaintiff alleges that "suffers daily chronic and substantial pain" from the hernia. (Id.)

In addition to the alleged lack of care for his hernia, Plaintiff asserts that he "underwent serious depression after his assault and during the physical healing" from the assault that occurred on March 17, 2011. (Id.) Plaintiff states that he sought "help through the victim advocate, but never received any type of help or[] spoke to anyone from this department within the YCDC facility." (Id.)

3

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

**A. Defendant Jewell's Motion for Summary Judgment (Dkt. No. 45)**

Defendant Dr. Jewell filed the instant Motion for Summary Judgment on June 21, 2013. (Dkt. No. 45.) As discussed above, Plaintiff's claims against Dr. Jewell pertain to Plaintiff's medical care. (See generally Dkt. No. 1.)

In Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal citations omitted).[2] To prevail on an Eighth Amendment deliberate indifference claim, "a

---

[2] Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under

4

prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (internal quotation marks and citations omitted). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." Id. It is well-settled that mere negligence does not constitute deliberate indifference. Estelle, 429 U.S. at 105-06; Grayson v. Peed, 195 F.3d 692, 695-96 (4th Cir. 1999); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (holding that "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not sufficient to raise an Eighth Amendment claim pursuant to § 1983).

Defendant Jewell asserts that he is entitled to summary judgment, apparently characterizing Plaintiff's claim as a negligence claim, although Jewell also references the deliberate indifference standard. (See generally Dkt. No. 45-1.) In his Memorandum in Support of his Motion for Summary Judgment, Jewell states that he "does not set policy at York Detention and cannot compel physicians to see anyone without prior financial arrangements being made." (Dkt. No. 45-1 at 2 of 7.) Citing the Affidavit of Dr. Bailey, Defendant Jewell states,

> Incisional hernias following a gastric by-pass does not require surgical treatment. It is not to be confused with an inguinal hernia. An incisional hernia sometimes results from surgery to the abdominal wall and it does not completely close. There is no showing in the records that Dietrich suffers pain or any need for surgery. The surgery would be elective if the Plaintiff's [sic] wishes and there is no urgency.

(Id.) Although Defendant Jewell attached Plaintiff's medical records to his Motion for Summary Judgment, Dr. Bailey's Affidavit was not filed until December 5, 2013. (See Dkt.

---

the Eighth Amendment. See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) (citing Estelle, 429 U.S. 97); see also Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

No. 45-2; Dkt. No. 92.) Jewell also contends that he is entitled to summary judgment because Plaintiff has made no showing of "a genuine issue as to both negligence, breach of the standard of care and causally related damages." (Dkt. No. 45-1 at 5-6 of 7.)

The undersigned recommends granting summary judgment to Defendant Jewell. Plaintiff's complaint against Jewell is, in sum, a complaint that after Plaintiff was diagnosed with a hernia, he did not and has not received surgery to correct it. (See Dkt. No. 1 at 7-8 of 11.) In his Memorandum in Support of his Motion for Summary Judgment, Jewell states,

> The records of the facility show that Dr. Jewell had treated the Plaintiff in follow-up for his facial injury and treated him from time to time for back pain. On a visit of October 28, 2011, Dr. Jewell noted a "hard, swollen area in the lower abdomen."

(Dkt. No. 45-2 at 2 of 7.) According to Dr. Jewell, Plaintiff told Jewell the area had "been there for a while and that he had a history of gastric by-pass as shown on his admission disclosure." (Dkt. No. 45-2 at 2 of 7.) Plaintiff disputes Jewell's assertion that Plaintiff "disclose[d] that the are had been swollen for a while." (Dkt. No. 48 at 2 of 13.) Plaintiff does not appear to dispute that, approximately six years prior to his incarceration, he had gastric bypass surgery. (See Dkt. No. 45-3 at 2 of 38.)

It is undisputed that Plaintiff has a hernia and that it has not been surgically treated. Defendant Jewell presented evidence that Plaintiff was diagnosed with an incisional hernia for which "surgery would be elective." (Dkt. No. 92-1 at 2 of 3.) In opposing Jewell's Motion for Summary Judgment, Plaintiff contends that he was suffering from pain as a result of the hernia. (See Dkt. No. 48 at 6 of 13.) Plaintiff contends that the hernia "was in fact causing [him] pain daily and continues to this day." (Dkt. No. 48 at 9 of 13.)

The undersigned has reviewed Plaintiff's medical records. After Plaintiff's diagnosis with the hernia, it is unclear whether Jewell saw Plaintiff again. (See Dkt. No. 49 at 2 of 4.) However, Jewell's name appears on two medical records subsequent to Plaintiff's

6

diagnosis. On April 11, 2012, Plaintiff reported to medical complaining of lower pack pain, constipation, dry eyes, and dry skin; Tylenol, metamucil, natural tears eye drops, and bag balm were ordered for the Plaintiff. (Dkt. No. 45-2 at 35 of 38.) Jewell's name also appears on Plaintiff's medical record dated January 3, 2013. (Dkt. No. 45-2 at 38 of 38.) According to that record, Plaintiff complained of constipation and was prescribed Senna-S tablets for fourteen days. (Id.)

Plaintiff is clearly unhappy with the decision that surgery is not required for his hernia. However, this medical judgment does not constitute deliberate indifference to a serious medical need. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."); see also Webb v. Hamidullah, 281 Fed. App'x 159, 165-67 (4th Cir. 2008) (no deliberate indifference on the defendants' classification of the plaintiff's hernia problem as elective, stating, "[E]ven if Dr. Vendel somehow misdiagnosed [the plaintiff's] need for surgery, Dr. Vendel made extensive efforts to diagnose, monitor, and control Webb's hernia symptoms, and . . . he did not disregard any risk of which he was aware"; no deliberate indifference where elective hernia surgery was delayed when there was no "substantial harm to the patient"); Brown v. Beard, 445 Fed. App'x 453, 456 (3d Cir. 2011) ("[T]he mere assertion that defendants considered cost in treating [the plaintiff's] hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care."); Mesa v. Kasule, Civ. A. No. 9:12cv42, 2013 WL 2151706, at *5 (E.D. Tex. May 15, 2013) ("In this case, Mesa has been seen on a number of occasions by medical personnel, all of whom determined that surgery on his hernia was not warranted. His disagreement with these assessments does not show that he has been the victim of deliberate indifference to his serious medical needs."); Bradley v. Hallsworth, Civ. A. No., 2011 WL

4404116, at *11 (W.D. Mich. Aug. 19, 2011) adopted at 2011 WL 4404080 (W.D. Mich. Sept. 21, 2011) ("[P]laintiff's own disagreement with Dr. Jenkins regarding the need for hernia required surgery does not give rise to a federal constitutional claim.").

In his Response in Opposition to Jewell's Motion for Summary Judgment, Plaintiff contends that he was, and still is, in pain as a result of his hernia. (See generally Dkt. No. 48.) However, Plaintiff's medical records contain no indication that Plaintiff ever complained of pain related to his hernia. Simply put, there is no evidence to support a finding that Dr. Jewell knew that Plaintiff was in pain and, knowing that, denied pain medication to Plaintiff. In fact, according to the medical records, when Plaintiff was seen on April 11, 2012, complaining of lower back pain, he was prescribed 1000 milligrams of Tylenol, two times a day, for five days. (See Dkt. No. 45-2 at 35 of 38.) On the instant record, no reasonable jury could find that Dr. Jewell was deliberately indifferent to Plaintiff's serious medical needs. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (deliberate indifference standard requires that the official "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); see also Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) ("[T]here is no evidence in the record that either doctor knew about the pituitary tumor itself. Johnson fails to meet his burden of producing some evidence of the doctors' subjective knowledge of the pituitary tumor. Without evidence that the doctors 'bridged the gap' between the symptoms and the tumor itself, Johnson cannot survive summary judgment.").[3] The undersigned therefore recommends granting summary judgment to Dr. Jewell.

---

[3] Pursuant to the same rationale, any claim that Defendant Jewell was deliberately indifferent to Plaintiff's serious medical needs by denying mental health treatment to the Plaintiff fails. Plaintiff has not shown or even alleged that Defendant Jewell was aware of Plaintiff's alleged need for mental health treatment.

**B. Plaintiff's Motion for Summary Judgment (Dkt. No. 86)**

On or about November 21, 2013, Plaintiff filed a Motion for Summary Judgment. (Dkt. No. 86.) In that motion, Plaintiff appears to seek summary judgment as to Defendant Jewell as a result of Jewell's alleged failure to respond to discovery requests. (See Dkt. No. 86 at 1-2 of 4.) Plaintiff states,

> On date of April 1, 2013, Notice was sent to Defendant Jewell for Motion of Discovery and again on 10-2-2-13 a Second Notice was mailed to Defendant Jewell for a full disclosure of discovery which was due on 11-2-2013. However, Defendant Jewell has not filed any type of answer for discovery request, nor has Defendant Jewell named herein requested a continuance pertaining to the request for discovery (full disclosure).

(Id. at 1-2 of 4.)

It appears that Plaintiff filed the instant Motion for Summary Judgment prior to receiving the undersigned's Order dated November 22, 2013. (See Dkt. No. 82.) In that Order, the undersigned addressed Plaintiff's complaints about Defendants' failure to respond to discovery requests. (Dkt. No. 82.) Plaintiff's discovery motions were denied. Furthermore, as noted above, Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). For the reasons discussed above, Defendant Jewell is entitled to summary judgment. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. No. 86) be denied.

**C. Plaintiff's Motion "for Default Order" (Dkt. No. 87)**

On or about November 21, 2013, Plaintiff also filed a Motion "for Default Order". (Dkt. No. 87.) In this motion, Plaintiff complains about the "Defendants" lack of response to discovery. (See generally Dkt. No. 87.) It is not entirely clear to which Defendant or Defendants Plaintiff is referring. Plaintiff states,

> On April 1, 2013, Defendant was served with request of Motion of Discovery and again on October 2, 2013, a second request for discovery (full disclosure). Defendant have failed to respond to either motion in any type of way within the (30 days) per the law.

(Dkt. No. 87 at 1 of 2.)

Plaintiff's Motion "for Default Order" also appears to be directed at the discovery matters that were addressed in the undersigned's Order dated November 22, 2013. (See Dkt. No. 82.) The undersigned recommends denying Plaintiff's Motion "for Default Order." (Dkt. No. 87.)

Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of default when a defendant "fail[s] to plead or otherwise defend." FED. R. CIV. P. 55(a). Rule 55 states, in relevant part,

> **(a) Entering a Default**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> **(b) Entering a Default Judgment**.
>
>> **(1) By the Clerk**. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>>
>> **(2) By the Court**. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

> **(A)** conduct an accounting;
>
> **(B)** determine the amount of damages;
>
> **(C)** establish the truth of any allegation by evidence; or
>
> **(D)** investigate any other matter.

Fed. R. Civ. P. 55(a)-(b).

In the instant case, none of the Defendants are in default; Defendant Jewell filed his Answer on March 7, 2013, and the remaining Defendants filed their Answer on March 14, 2013. (See Dkt. No. 18; Dkt. No. 21.) Furthermore, Plaintiff's discovery motions were denied, and, in any event, "the failure of the defendants to timely respond to the plaintiffs' discovery requests would not entitle the plaintiffs to a judgment, default or otherwise." Curry v. Charleston County Police Dep't, No. 0:10–522–HFF–PJG, 2010 WL 3766875, at *1 (D.S.C. Aug. 31, 2010), adopted at 2010 WL 3655631 (D.S.C. Sept. 20, 2010); see also Fed. R. Civ. P. 37(b)(2) (listing the sanctions for failure to comply with a court order to provide or permit discovery). The undersigned therefore recommends denying Plaintiff's Motion "for Default Order" (Dkt. No. 87.)

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment (Dkt. No. 86) and Plaintiff's Motion "for Default Order" (Dkt. No. 87) both be DENIED. It is further RECOMMENDED that Defendant Jewell's Motion for Summary Judgment (Dkt. No. 45) be GRANTED.

IT IS SO RECOMMENDED.

            s/Bruce Howe Hendricks
            United States Magistrate Judge
January 10, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).