IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| David Micheal Dietrich,               )<br>                                                        )<br>                          Plaintiff,     )<br>                                                        )<br>           v.                                          )<br>                                                        )<br>                                                        )<br>Sheriff Bruce Bryant; Richard L. Martin; )<br>Chief Arwood; Lt. Guidry; Tammy     )<br>Dover, *RN*; and James Jewell, *MD*,   )<br>                                                        )<br>                          Defendants.  )<br>                                                        ) | Civil Action No.2:12-cv-03501-RMG-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

The Plaintiff, a pretrial detainee proceeding *pro se*, brought this action pursuant to Title 42, United States Code, Section 1983. This matter is before the Court upon the following motions: (a) a Motion for Summary Judgment filed by Defendants Arwood, Bryant, Dover, Guidry, and Martin (Dkt. No. 62);[1] (b) Plaintiff's Motion for Summary Judgment (Dkt. No. 84); and (c) Plaintiff's Motion "for Default Order" (Dkt. No. 85).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about December 4, 2012. (Dkt. No. 1.) On September 23, 2013, Defendants filed a Motion for Summary Judgment. (Dkt. No. 62.) By order filed September 24, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 63.) Plaintiff filed

---

[1] Although James Jewell was also originally named as a Defendant in this case; summary judgment was granted to him on January 24, 2014. (See Dkt. No. 114.) For purposes of the instant Report and Recommendation, the undersigned's reference to "Defendants" refers to the remaining defendants: Defendants Arwood, Bryant, Dover, Guidry, and Martin.

his Response in Opposition to Defendants' Motion for Summary Judgment on or about October 16, 2013, to which Defendants filed a Reply. (Dkt. No. 69; Dkt. No. 78.)

On or about November 25, 2013, Plaintiff filed two motions: a Motion for Summary Judgment and a Motion "for Default Order." (Dkt. No. 84; Dkt. No. 85.) Responses to both of these motions have been filed. (See Dkt. No. 101; Dkt. No. 100; see also Dkt. No. 102.)

## PROCEDURAL FACTS

Plaintiff, a pretrial detainee at York County Detention Center ("Detention Center" or "YCDC"), filed the instant action pursuant to 42 U.S.C. § 1983 on or about December 5, 2012. (See Dkt. No. 1.) Plaintiff alleges that on March 17, 2011, he was "violently and severely assaulted" at the Detention Facility. (Dkt. No. 1 at 5 of 11.) He contends that officers at the Detention Facility "acted with 'reckless disregard'" for his safety; he alleges that facility officials "knew that there was a substantial risk to [Plaintiff] of serious harm, but ignored that risk and failed to protect [Plaintiff] while [he] was in protective custody" within the Detention Facility. (Id.) Plaintiff states,

> [I]n booking William Huggins officers blatantly disregarded his violent history as well as his back-ground in screening him, and placed a violent offender within (I block) along with Dietrich, when in fact Huggins should and was supposed to have been placed in (I max unit).

(Dkt. No. 1 at 6 of 11.) Plaintiff alleges that "officials" knew of Huggins' "violent history and . . . failed to monitor Huggins closely d[ue] to his violent acts." (Id.)

Specifically, Plaintiff alleges that on March 17, 2011, Sergeant Hope was doing his rounds in the segregation unit when Hope saw food in one of the inmate's cells, and told that inmate that food was not allowed in the cells. (Dkt. No. 1 at 9 of 11.) Plaintiff states that because this inmate could not read or write, Plaintiff "was explaining to him from [the] 'York County Inmate Handbook'" that food was not allowed in cells. (Id.) Plaintiff states,

2

> At this point, another inmate known as William Huggins screamed out of [his] cell that the person telling you about the food is the one who snitched on you. I said I did no such thing.

(Id.) Plaintiff alleges that the lock on Huggins' cell door was not locked, which allowed Huggins to move about within the segregation unit at the Detention Facility. (Dkt. No. 1 at 10 of 11.) Plaintiff further alleges that "all [of] a sudden Huggins came out of his cell" and "sucker punched" Plaintiff, who "never saw it coming." (Id.) According to Plaintiff, he suffered six fractures to the left side of his face and a broken nose as a result of Huggins' assault. (Id.)

Plaintiff also complains about the medical care he has received at the Detention Facility and that he has been "denied adequate access to the courts." (See generally Dkt. No. 1.) Plaintiff alleges that has been "and is still currently suffering from [the] diagnosed medical ailment of 'hernia.'" (Id.) Plaintiff alleges that Defendant James Jewell, a physician, "stated to [Plaintiff] that they (YCDC) were not go[ing] to take [Plaintiff] to [an] outside physician for medial treatment for [his] hernia, although medical knows [Plaintiff] hurts [and is] in pain constantly." (Id.) According to Plaintiff, although he is indigent and has been at the Detention Facility for thirty months, Defendant Tammy Dover, RN, advised Plaintiff that Plaintiff "must pay for transportation of ($90.00) dollars and the cost of surgery up-front according to (YCDC) policy." (Dkt. No. 1 at 8 of 11.) Plaintiff alleges that "suffers daily chronic and substantial pain" from the hernia. (Id.)

In addition to the alleged lack of care for his hernia, Plaintiff asserts that he "underwent serious depression after his assault and during the physical healing" from the assault that occurred on March 17, 2011. (Id.) Plaintiff states that he sought "help through the victim advocate, but never received any type of help or[] spoke to anyone from this department within the YCDC facility." (Id.)

3

**APPLICABLE LAW**

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**DISCUSSION**

**A. Defendants' Motion for Summary Judgment (Dkt. No. 62)**

Defendants seek summary judgment on numerous grounds. (See generally Dkt. No. 62.) As indicated above, the claim against Defendants arises, at least in part, from a fellow detainee's assault upon Plaintiff on March 17, 2011. Plaintiff asserts that Defendants "acted with 'reckless disregard'" for Plaintiff's safety while Plaintiff was "already in (A-S-5) Protective Custody (pending sexual charges)." (Dkt. No. 1 at 5 of 11.) Plaintiff complains that "officers blatantly disregarded [the other detainee's] violent history . . . and placed a violent offender within (I block) along with [Plaintiff], when in fact [the other detainee] should and was supposed to have been placed in (I max unit)." (Dkt. No. 1 at 6 of 11.)

Because Plaintiff was a pretrial detainee at the time of the incident in question, this court evaluates his § 1983 claim for failure to protect under the Due Process Clause of the

Fourteenth Amendment rather than the Eighth Amendment's prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). The Fourth Circuit has noted, however, that "[a]s a practical matter, . . . [the court] do[es] not distinguish between the Eighth and Fourteenth Amendments in the context of a pretrial detainee's § 1983 claim." Ervin v. Mangum, 127 F.3d 1099, at *4 (4th Cir. 1997) (citing Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992); Belcher v. Oliver, 898 F.2d 32, 33 (4th Cir. 1990)). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious . . . needs of the detainee." Belcher, 898 F.2d at 34.

"The Eighth Amendment imposes a duty on prison officials 'to protect prisoners from violence at the hands of other prisoners.'" Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 722-23 (4th Cir. 1994) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)). As the Fourth Circuit stated in Brown,

> Not every injury suffered by a prisoner at the hands of another establishes liability against a prison official, however. To make a valid claim under the Eighth Amendment, a prisoner must satisfy two elements. First, "the deprivation alleged must be sufficiently serious." Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir.2003) (internal quotation marks and citation omitted). "To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions." Id. . . . .
> Second, a prisoner must demonstrate that the prison official had a "sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). When an inmate makes a challenge under the Eighth Amendment, "the requisite state of mind is one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citation omitted). A prison official demonstrates deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." Id. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Case v. Ahitow, 301 F.3d 605, 607 (7th Cir.2002).

Brown, 612 F.3d at 723.

5

Defendants attached several affidavits to their Motion for Summary Judgment, including the Affidavit of Randy J. Guidry. (See Dkt. No. 62-6; see also Dkt. No. 62.) Guidry states in his Affidavit that he holds the "position of Watch Commander–Classification / ICE 287g Supervisor with the York County Detention Center." (Guidry Aff. ¶ 1.) According to Guidry, Plaintiff was booked at the Detention Center on May 30, 2010, on three counts of criminal sexual conduct with a minor; on June 1, 2010, he "was reclassified to 'administrative segregation' for purposes of protective custody and placed in the Special Management Unit at that time." (Id. ¶¶ 5-6.) Guidry states that Plaintiff was placed in administrative segregation "at the request of Plaintiff for his own personal safety and security." (Id. ¶ 6.)[2] Guidry further states the area to which Plaintiff was assigned was "physically separated from the inmates in the general population," and "[t]his segregated/separate area houses sixteen (16) inmates." (Id. ¶ 9.) According to Guidry,

> 10. Plaintiff remained in this administrative segregation capacity continuously through March 17, 2011, the date he was assaulted by Inmate William Edward Higgins.
>
> 11. During that roughly 9½ month period (June 1, 2010 through March 17, 2011), Plaintiff never complained of having issues with any other inmate and further never requested that his classification of administrative segregation be reviewed or modified.
>
> 12. On or about February 20, 2011, Inmate Higgins was booked into the YCDC on the following charges: Trafficking in Crack Cocaine, Assault and Battery (2nd degree), and Resisting Arrest. Upon information and belief, Inmate Higgins had no previous bookings at the YCDC before such date.
>
> 13. These criminal charges were predicated on allegations that Inmate Higgins had assaulted a female City of Rock Hill Police Officer.

---

[2] Guidry also states that at the time Plaintiff was placed on administrative segregation, "Plaintiff understood that he had an option of requesting a lockdown status for additional security purposes," but Plaintiff "expressly declined the option of being in lockdown status." (Guidry Aff. ¶ 7; see also Guidry Aff. C.) Plaintiff disputes this evidence, but this dispute is not a material one. (See Dkt. No. 69 at 5-6 of 13.)

6

>  14. Given these particulars, YCDC officials were concerned that Inmate Higgins might pose a threat to YCDC staff. There was the further concern that his own safety or security may be present an issue since it was known by the staff that he had allegedly assaulted a law enforcement officer. Consequently, Inmate Higgins was assigned to the Special Management Unit.
>
>  15. As of March 17, 2011, Inmate Higgins presented no signs of aggression as an inmate and had not encountered conflicts with any other inmate that was brought to the attention of YCDC staff.
>
>  16. From a review of the records, between the dates of on or about March 5, 2011 through March 17, 2011, both Inmate Higgins and Plaintiff occupied the same segregation area of the Special Management Unit.
>
>  17. By way of illustration, these two individuals would be in physical proximity with one another–along with fourteen other inmates–on a daily basis. Upon information and belief, at no such time during that interim was there any friction between these two inmates. At no time during that period was there any complaint raised by Plaintiff about Inmate Higgins or a request for a classification review or transfer to another location.

(Guidry Aff. ¶¶ 10-17.) Guidry indicates that after the attack, Inmate Higgins "was relocated from the segregation area and placed in maximum security." (Id. ¶ 18.)

In seeking summary judgment, Defendants contend that Plaintiff's claim for deliberate indifference fails because "the Plaintiff cannot show that . . . Defendants knew of and disregarded any potential harm to him . . . ." (Dkt. No. 62-1 at 16.) The undersigned agrees with Defendants. There is no evidence in the record that Defendants knew Inmate Higgins posed a threat to Plaintiff and disregarded that risk. In fact, Plaintiff himself states, "Plaintiff had no reason to alert any staffer about a problem with Higgins, because **there were none up to the point of assault**." (Dkt. No. 69 at 10 of 13 (emphasis added).) Plaintiff appears to believe the mere fact that another detainee attacked him subjects Defendants to liability for deliberate indifference; he states, "The very fact remains Dietrich put his safety in York County Detention Facility officials['] hands, and in return he got hurt physically [due] to there [sic] reckless disregard for his safety here." (Dkt. No. 69 at 4 of 13.)

7

Despite Plaintiff's apparent belief, however, this is simply not the law. See Farmer, 511 U.S. at 834 ("It is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."); see also Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997) ("It is clear . . . that [the defendant] had actual knowledge of facts from which a reasonable person might have inferred the existence of the substantial and unique risk to [the plaintiff]. . . . This, however, is not enough to establish a violation of the Eighth Amendment."); Drayton v. Cohen, C/A No. 2:10-3171-TMC, 2012 WL 666839, at *7 (D.S.C. Feb. 29, 2012), *aff'd* 474 Fed. App'x 991 (4th Cir. 2012) (summary judgment to defendants on a failure to protect claim, stating, "[H]ere, there is no evidence that McIlwain presently posed a serious risk of violence to Plaintiff. As Plaintiff complained to Defendants, when he did confront McIlwain about his behavior, McIlwain either ignored Plaintiff or became *verbally* hostile. Plaintiff never complained to Defendants that McIlwain had assaulted him or even physically threatened him prior to the assault."); Carter v. Galloway, 352 F.3d 1346, 1349-50 (11th Cir. 2003) (affirming award of summary judgment to defendants where defendants "clearly knew that Inmate Barnes was a 'problem inmate' with a well-documented history of prison disobedience and had been prone to violence" but the plaintiff "failed to establish that either Defendant had a subjective awareness of a substantial risk of serious physical threat to Plaintiff"); Gibson v. Laurens County Det. Ctr., No. 2:10-cv-02132-RBH, 2011 WL 3903175, at *2-3 (D.S.C. Sept. 6, 2011) (summary judgment to defendants on a failure to protect claim where the plaintiff's "conclusory allegations [were] insufficient to withstand the [d]efendants' properly supported motion for summary judgment").

Although Plaintiff asserts in his Response in Opposition that "negligence can be substantiated here (Dkt. No. 69 at 4 of 13), negligent failure by a prison official to protect an inmate from an attack by another inmate does not rise to the level of a violation of the

Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987) (citing Davidson v. Cannon, 474 U.S. 344 (1986)). The undersigned therefore recommends granting summary judgment to Defendants on the failure to protect claim.[3]

Plaintiff also complains about the medical care, or alleged lack thereof, at the Detention Facility. Much of this complaint pertains to treatment for Plaintiff's hernia; that claim has been previously addressed. (See Dkt. No. 109; Dkt. No. 114.) On January 24, 2014, Judge Gergel granted Dr. Jewell's Motion for Summary Judgment; Dr. Jewell is

---

[3]To the extent Plaintiff attempt to assert a conditions of confinement or a supervisory liability claim, those claims fail. Plaintiff's conditions of confinement claim fails because Plaintiff has not shown either (a) an expressed intent to punish, or (b) lack of reasonable relationship to a legitimate non-punitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992). Guidry states in his Affidavit that Plaintiff was placed in administrative segregation for purposes of Plaintiff's "personal safety and security," and that Higgins was placed in the Special Management Unit out of concern for the safety of YCDC staff as well as Higgins' safety. (Guidry Aff. ¶¶ 6, 14.)

To the extent Plaintiff has sued various Defendants due to the fact that they occupy a supervisory position, the undersigned notes that the doctrines of vicarious liability and respondeat superior are generally not applicable in § 1983 actions. Vinnedge v. Gibbs, 550 F.2d 926, 927-29 (4th Cir. 1977); see also Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691 (1978) (holding "that a municipality cannot be held liable *solely* because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). However, "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). In such a case, liability "is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. (citations omitted). A plaintiff in a supervisory liability case "assumes a heavy burden of proof," as the plaintiff "not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices." Id. at 373 (internal quotation marks and citations omitted). Generally speaking, a plaintiff cannot satisfy this heavy burden of proof "by pointing to a single incident or isolated incidents," but "[a] supervisor's continued inaction in the face of documented widespread abuses . . . provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." Id. (citations omitted). There is no evidence or even allegation of a supervisor's "continued inaction in the face of documented widespread abuses." To the extent Plaintiff named these Defendants due to their supervisory position, such position alone is insufficient to establish liability. See Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.").

To the extent he complains about lack of access to the courts, such a claim fails because Plaintiff has alleged no prejudice to litigation. See Lewis v. Casey, 518 U.S. 343, 349 (1996); see also Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

therefore no longer a party to the case *sub judice*. (Dkt. No. 114.) Defendant Dover remains a Defendant, but for the reasons discussed in the previous Report and Recommendation (Dkt. No. 109), Plaintiff's medical claims fail. The undersigned therefore recommends granting summary judgment to Defendant Dover.

**B. Plaintiff's Motion for Summary Judgment (Dkt. No. 84)**

On or about November 21, 2013, Plaintiff filed a Motion for Summary Judgment. (Dkt. No. 84.) In that motion, Plaintiff asserts that on October 29, 2013, Magistrate Judge Hodges granted Defendants' Motion for an Extension of Time to file a Reply, giving Defendants until November 12, 2013, to file their Reply. (See Dkt. No. 84 at 1 of 4.) Plaintiff appears to assert that Defendants failed to Reply. (See id. at 2 of 4.)

In addition, Plaintiff complains that "Defendants have refused to give Plaintiff full disclosure of discovery." (Id. at 3 of 4.) Plaintiff contends that because "York County Facility paid in full [Plaintiff's] medical bills," Defendants have "admi[tted] . . . guilt." (Id.)[4]

As a preliminary matter, and contrary to Plaintiff's assertions, Defendants did file a Reply on November 12, 2013. (See Dkt. No. 78.) In addition, it appears that Plaintiff filed the instant Motion for Summary Judgment prior to receiving the undersigned's Order dated November 22, 2013. (See Dkt. No. 82.) In that Order, the undersigned addressed Plaintiff's complaints about Defendants' failure to respond to discovery requests. (Dkt. No. 82.) Plaintiff's discovery motions were denied. Furthermore, as noted above, Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). For the reasons discussed

---

[4] Federal Rule of Evidence 409 states, "Evidence of furnishing, promising to pay, or offering to pay medical, hospital, or similar expenses resulting from an injury *is not admissible to prove liability for the injury*." Fed. R. Evid. 409 (emphasis added).

above, Defendants are entitled to summary judgment. Accordingly, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Dkt. No. 84) be denied.

**C. Plaintiff's Motion "for Default Order" (Dkt. No. 85)**

On or about November 21, 2013, Plaintiff also filed a Motion "for Default Order". (Dkt. No. 85.) In this motion, Plaintiff again complains that Defendants failed to timely file a Reply, after Magistrate Judge Hodges granted their request for an extension of time. (Dkt. No. 85 at 1 of 3.) He contends that, as a result, he is entitled to an order of default. (Id. at 2 of 3.) The undersigned recommends denying Plaintiff's Motion "for Default Order." (Dkt. No. 85.)

Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of default when a defendant "fail[s] to plead or otherwise defend." FED. R. CIV. P. 55(a). Rule 55 states, in relevant part,

> **(a) Entering a Default**. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> **(b) Entering a Default Judgment**.
>
> > **(1) By the Clerk**. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> >
> > **(2) By the Court**. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make

>    referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
>    **(A)** conduct an accounting;
>
>    **(B)** determine the amount of damages;
>
>    **(C)** establish the truth of any allegation by evidence; or
>
>    **(D)** investigate any other matter.

FED. R. CIV. P. 55(a)-(b).

In the instant case, Defendants are not in default; Defendants filed their Answer on March 14, 2013. (Dkt. No. 21.) Furthermore, contrary to Plaintiff's assertions, Defendants did file a Reply on November 12, 2013. (See Dkt. No. 78.) The undersigned therefore recommends denying Plaintiff's Motion "for Default Order" (Dkt. No. 85.)

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment (Dkt. No. 84) and Plaintiff's Motion "for Default Order" (Dkt. No. 85) both be DENIED. It is further RECOMMENDED that the Motion for Summary Judgment filed by Defendants Arwood, Bryant, Dover, Guidry, and Martin (Dkt. No. 62) be GRANTED.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks  
United States Magistrate Judge

May 19, 2014  
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).